IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT LINCOLN,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| v. | : | |
| | : | |
| **JOHN A. PALAKOVICH, THE** | : | |
| **DISTRICT ATTORNEY OF THE** | : | **No. 07-1373** |
| **COUNTY OF PHILADELPHIA, and THE** | : | |
| **ATTORNEY GENERAL OF THE STATE** | : | |
| **OF PENNSYLVANIA,** | : | |
| Respondents. | : | |

## MEMORANDUM

**Norma L. Shapiro, J.**                                                                                                  **August 24, 2011**

Robert Lincoln ("Lincoln") petitioned for writ of habeas corpus under 28 U.S.C. § 2254. Lincoln alleged, among other things, ineffective assistance of his court-appointed counsel, Arnold Laikin ("Laikin"), for failure to consult with him prior to withdrawing his direct appeal to the Pennsylvania Superior Court ("Superior Court"). We originally denied Lincoln's petition for a writ of habeas corpus because the claim of ineffective assistance of direct appeal counsel was procedurally defaulted. The Court of Appeals granted a certificate of appealability, and held that "Lincoln's claim of an unfair denial of his right to a direct appeal, if sufficiently supported by evidence, would constitute a manifest injustice sufficient to grant his petition for writ of habeas corpus, regardless of any procedural defect." *Lincoln v. Palakovich et al.*, 384 Fed. App'x 193, 196 (3d Cir. 2010) (not precedential). Finding the record insufficient to determine if such manifest injustice had occurred, the Court of Appeals reversed and remanded, with instructions "to consider whether Lincoln's right to a direct appeal was prejudiced by the conduct of his direct appeal counsel." *Id.* at 196-97. Following an evidentiary hearing, we conclude that Lincoln's right to a direct appeal was prejudiced by the conduct of his direct appeal counsel, and grant his petition

unless reinstatement of his direct appeal, *nunc pro tunc*, is allowed.

**I.    Background**[1]

On October 27, 2003, Lincoln entered a negotiated guilty plea to robbery, aggravated assault, and attempted murder in the Court of Common Pleas of Philadelphia County ("Court of Common Pleas").  Lincoln was then sentenced to an aggregate term of sixteen to forty years imprisonment and twenty years probation.

On November 26, 2003, Lincoln's counsel, Laikin, filed a timely notice of appeal to the Superior Court, but Laikin neglected to file a docketing statement with the notice of appeal, as required by Pennsylvania Rule of Appellate Procedure 3517.  On January 2, 2004, Laikin filed a praecipe to discontinue the appeal.  On January 5, 2004, the Superior Court ordered Laikin to file a docketing statement to accompany the notice of appeal, but the next day, the Superior Court discontinued the appeal, presumably because of the filed praecipe to discontinue.[2]

On February 3, 2004, Lincoln filed a *pro se* petition for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9451 *et seq.*  The Court of Common Pleas appointed counsel to represent Lincoln in the PCRA proceedings, but court-appointed counsel filed a letter seeking to withdraw representation because counsel believed there were no

---

[1] We detail only those facts relevant on remand.  A complete discussion of the facts underlying Lincoln's petition for a writ of habeas corpus appears in the court's earlier opinion, No. 07-1373, 2008 WL 2468358 (E.D. Pa. June 18, 2008).

[2] There has been some confusion about when Laikin filed the praecipe to discontinue the appeal.  The Court of Appeals concluded that, because the praecipe to discontinue was signed and posted for service by mail on January 2, 2004, it was filed that same day.  *Lincoln*, 384 Fed. App'x at 194 n.3.  The Court of Appeals also concluded that the Superior Court's order discontinuing the appeal was signed by the Prothonotary on January 6, 2004, even though it was docketed on January 5, 2004.  *Id.*  The state court record and Laikin's testimony at the evidentiary hearing support the Court of Appeals' chronology.

substantive or procedural issues of arguable merit.[3]  The Court of Common Pleas issued a notice of intent to dismiss Lincoln's PCRA petition without a hearing, under Pennsylvania Rule of Criminal Procedure 907(1).  Lincoln responded to the notice of intent to dismiss with a letter in which he raised, for the first time, an ineffective assistance of counsel claim against his direct appeal counsel, Laikin; the claim alleged Laikin was ineffective for withdrawing the direct appeal to the Superior Court.  Lincoln did not amend his PCRA petition to include the ineffective assistance of counsel claim against Laikin.  The Court of Common Pleas dismissed Lincoln's PCRA petition without addressing whether Laikin's withdrawal of the direct appeal constituted ineffective assistance of counsel.  The Superior Court affirmed because Lincoln's claim of ineffective assistance of direct appeal counsel was waived when he failed to raise it in his PCRA petition.

Lincoln petitioned for a writ of habeas corpus in federal court, and argued, among other things, that direct appeal counsel was ineffective for withdrawing the direct appeal.  The Magistrate Judge's Report and Recommendation ("R&R") found that Lincoln's claim of ineffective assistance of direct appeal counsel was procedurally defaulted because it was not raised in his PCRA petition.  Lincoln objected to the R&R and argued that the ineffective assistance of direct appeal counsel served as cause and prejudice to overcome the procedural default.  We overruled Lincoln's objection and adopted the R&R because the procedural default occurred in the PCRA proceedings, when Lincoln failed to raise the ineffective assistance claim in his PCRA petition, and not on direct appeal.  We then denied his petition for a writ of habeas corpus.

The Court of Appeals issued a certificate of appealability to consider Lincoln's claim of

---

[3] The "no-merit letter" was filed in accord with *Commonwealth v. Finley*, 479 A.2d 568 (Pa. Super. Ct. 1984).

ineffective assistance of direct appeal counsel.  The Court of Appeals stated that even though this claim was procedurally defaulted because Lincoln did not raise it in his PCRA petition, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard" to overcome procedural default.  *Lincoln*, 384 Fed. App'x at 196.  If counsel's ineffective assistance deprived a defendant of an entire stage of a judicial proceeding that defendant requested, such as a direct appeal, it should be presumed that counsel's ineffective assistance prejudiced defendant.  *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).  Applying *Flores-Ortega*, the Court of Appeals concluded that "Lincoln's claim of an unfair denial of his right to a direct appeal, if sufficiently supported by evidence, would constitute a manifest injustice sufficient to grant his petition for writ of habeas corpus, regardless of any procedural defect."  *Lincoln*, 384 Fed. App'x at 196.  The Court of Appeals remanded for this court to consider whether the conduct of direct appeal caused Lincoln to lose his right to a direct appeal, so that Lincoln demonstrated manifest injustice sufficient to overcome the procedural default.  *Id.* at 197.

## II.     Evidentiary Hearing

The evidentiary hearing was held to consider whether the conduct of Lincoln's direct appeal counsel caused him to lose his right to a direct appeal.  We first considered whether direct appeal counsel obtained Lincoln's agreement to withdraw the direct appeal.  *See id.* at 196.  If counsel did not consult Lincoln prior to withdrawing the appeal, we must consider whether there is a reasonable probability that, but for counsel's deficient failure to consult with him about the appeal, Lincoln would have pursued his direct appeal.  *Id.*; *see also Flores-Ortega*, 528 U.S. at 484.

Laikin testified that he represented Lincoln in 2003 for Lincoln's negotiated guilty plea and

sentencing in the Court of Common Pleas. *Id.* at 4:5-13. Laikin no longer has possession of the file from Lincoln's criminal matter; the file was destroyed during Laikin's move to a new office. Laikin testified from his own recollection, as refreshed by documents in the state court record and the District Attorney's discovery packet in state court. *Id.* at 3:21-5:21.

On August 15, 2003, Laikin wrote to Lincoln and advised him to accept a negotiated guilty plea with an offer of twenty to forty years imprisonment. *Id.* at 6:6-7:11; Petitioner Ex. 1 (Aug. 15, 2003 Letter from Laikin to Lincoln); Commonwealth Ex. D (same). The letter noted that the applicable sentencing range, based on Lincoln's prior record and the gravity of his offenses, was sixteen or seventeen to twenty years imprisonment, plus or minus one year, but that Lincoln was scheduled to enter a plea before Judge Temin, who was considered very fair to defendants who plead guilty. Petitioner Ex. 1; Commonwealth Ex. D. Lincoln's court appearance was subsequently rescheduled, and instead of appearing before Judge Temin, Lincoln entered a guilty plea on October 27, 2003 before Judge Maier, who had a reputation as a strict sentencing judge. Tr. 9/28/10 at 7:6-22. On the same day as Lincoln's guilty plea, Judge Maier sentenced Lincoln to sixteen to forty years imprisonment (this was the negotiated sentence in the Lincoln's guilty plea). *Id.* at 19:4-12.

On November 21, 2003, Laikin wrote Lincoln a second letter. *Id.* at 8:5-9:11; Petitioner Ex. 2 (Nov. 21, 2003 Letter from Laikin to Lincoln). The body of the letter states:

> In response to your letter of 11/10/03 which I received on 11/20/03, you had ten days from October 27, 2003 to request a reconsideration of sentence. However, because you agreed to a negotiated guilty plea there was really no chance that Judge Mair [sic] would have reconsidered your sentence. You do have 30 days to appeal to the Superior Court for a lack of jurisdiction, illegal sentence or if your guilty plea was involuntary. I do not believe that any of these things have merit that would enable you to successfully appeal. Since you brought it up in your letter, Ms. Rivers [the victim] was almost dead. She needed three brain operations and lost her left eye entirely. All

of which you know from our prior meetings.

Petitioner Ex. 2.  Laikin testified that he cannot remember the content of Lincoln's November 10 letter, to which his November 21 letter responded.  Tr. 9/28/10 at 35:19-36:13.  No one has a copy of Lincoln's November 10 letter.  *Id.* at 36:14-16, 51:1-4.

On November 26, 2003, the last day Lincoln could appeal his guilty plea and sentence, Laikin filed a notice of appeal to the Superior Court.  *Id.* at 9:16-10:11; Petitioner Ex. 3 (Notice of Appeal).  Laikin had not called or visited Lincoln after the October 27, 2003 guilty plea and sentencing to discuss Lincoln's appellate rights, and Lincoln had not responded to Laikin's November 21, 2003 letter with a request for an appeal.[4]  Tr. 9/28/10 at 14:4-8, 32:2-9.  Nevertheless, Laikin testified that he filed the notice of appeal to preserve Lincoln's appellate rights in the event that Lincoln subsequently requested an appeal.  *Id.* at 9:23-10:14, 31:4-7; Commonwealth Ex. A (affidavit of Laikin).

On January 2, 2004, Laikin filed a praecipe to discontinue the direct appeal.  Tr. 9/28/10 at 33:7-15.  Laikin explained that he filed the praecipe without first consulting Lincoln because he assumed, since Lincoln had not yet contacted him to request an appeal, that Lincoln did not wish to appeal.  *Id.* at 12:8-13, 16:7-17, 34:11-14; Commonwealth Ex. A.  Laikin also testified that he believed a direct appeal would have lacked merit, since Lincoln's guilty plea was voluntary, and under the circumstances of Lincoln's crime and considering the negotiated guilty plea, Lincoln received a fair sentence.  Tr. 9/28/10 at 23:2-5, 26:17-22.  Laikin testified that, if Lincoln had requested an appeal, Laikin would not have filed the praecipe to discontinue the appeal.  *Id.* at

---

[4] Laikin testified that Lincoln contacted him by telephone sometime after the October 27, 2003 guilty plea (Laikin cannot recall exactly when), but Lincoln had only inquired about a motion for reconsideration, not a direct appeal.  Tr. 9/28/10 at 16:20-17:16.

34:11-14.

Lincoln testified that he asked Laikin to file a direct appeal on two separate occasions. First, after his October 27, 2003 guilty plea and sentencing, as the sheriffs were coming to place him in handcuffs, Lincoln testified he told Laikin he wanted to appeal to obtain a sentence reduction. *Id.* at 41:3-10. Second, Lincoln testified he wrote to Laikin on November 10, 2003 to inquire about the status of a motion for reconsideration and direct appeal. *Id.* at 41:15-42:2, 50:10-21. Lincoln testified that he wanted to take an appeal because Judge Maier had stated that he had a right to appeal, and he believed his sentence was too high and appealing might enable him to receive a new trial and lesser sentence. *Id.* at 41:3-14, 47:25-50:6. Lincoln explained that he first learned that Laikin had filed a notice of appeal when he received the notice that the appeal was dismissed; Laikin had not contacted him to tell him a notice of appeal had been filed or to ask him whether he wished to proceed with or discontinue the appeal. *Id.* at 42:3-9.

On cross-examination, Lincoln admitted that he was previously convicted of forgery. *Id.* at 43:23-25. He also admitted that he received the negotiated sentence for which he had bargained. *Id.* at 46:16-19.

### III. Discussion

A defendant claiming ineffective assistance of counsel in violation of the Sixth Amendment must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In *Flores-Ortega*, the Supreme Court held that counsel's failure to consult with a client regarding an appeal falls below an objective standard of reasonableness if: (a) "a rational defendant would want to appeal (for example, because there are

non-frivolous grounds for appeal)"; or (b) the defendant "reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* As to whether counsel's performance prejudiced defendant, the Court held that denial of an entire judicial proceeding, such as an appellate proceeding, mandates a "presumption of prejudice." *Id.* at 483. However, defendant must show causation: "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.*

Under the Court of Appeals' mandate, we must apply *Flores-Ortega* to determine if Laikin's conduct prejudiced Licoln by causing him to lose his right to a direct appeal.[5] We find that, as Lincoln testified and Laikin admitted, Laikin did not consult with Lincoln before filing a praecipe to discontinue the direct appeal. Laikin acted on his own when he filed the praecipe to discontinue; he did not receive instruction from Lincoln to withdraw the appeal. Laikin's failure to consult with Lincoln before withdrawing the appeal fell below an objective standard of reasonableness because Lincoln had reasonably demonstrated to Laikin that he wished to appeal.

---

[5] There are factual differences between *Flores-Ortega* and the circumstances surrounding Lincoln's direct appeal. In *Flores-Ortega*, defendant did not contact counsel to request a direct appeal, and counsel failed to file a timely appeal; the issue was whether counsel's failure to contact the client to discuss appellate rights, before the time to appeal had expired, was ineffective assistance. 528 U.S. at 474, 478. In contrast, Laikin did file a timely direct appeal, but then withdrew the appeal without consulting Lincoln; the issue is whether Laikin's failure to consult with Lincoln, prior to withdrawing the appeal, was ineffective assistance. Although *Flores-Ortega* concerned counsel's constitutional duty to consult with the client when deciding whether to *file* an appeal, and Lincoln's habeas petition concerns counsel's failure to consult when deciding whether to *withdraw* an appeal, the differences are immaterial. The Court of Appeals applied *Flores-Ortega* broadly, to include circumstances in which counsel's failure to consult with a client regarding an appeal, either whether to file or whether to withdraw, deprives the client of an appellate proceeding. *See Lincoln*, 384 Fed. App'x at 196.

*See id.* at 480. Lincoln testified that he requested an appeal in a November 10, 2003 letter to Laikin. Lincoln's testimony is supported by Laikin's November 21, 2003 letter to Lincoln, which refers to Lincoln's November 10 letter when advising Lincoln about the thirty day time period in which Lincoln might file a notice of appeal.[6] Laikin's failure to consult with Lincoln prior to withdrawing the appeal caused prejudice to Lincoln because Laikin's conduct deprived Lincoln of the appellate proceeding he had requested; had Laikin consulted Lincoln, the direct appeal would not have been withdrawn. *See id.* at 483. Laikin's representation of Lincoln on direct appeal was ineffective assistance of counsel in violation of the Sixth Amendment. *See id.* at 476-83.

Laikin's ineffective assistance is manifest injustice sufficient to overcome the procedural default from Lincoln's failure to raise the ineffective assistance claim in his PCRA petition. *See Lincoln*, 384 Fed. App'x at 196. We will grant Lincoln's petition for habeas corpus; Lincoln's conviction and sentence will be vacated, unless Lincoln's direct appeal is reinstated, *nunc pro tunc*, within 180 days. An appropriate order follows.

---

[6] Even if Lincoln's prior conviction for forgery bears on his credibility, Lincoln's testimony that he requested a direct appeal in his November 10 letter is supported by Laikin's November 21 letter to Lincoln.